No. 12-15408-AA

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CORY SINGLETERY,
Plaintiff-Appellant

v.

EQUIFAX INFORMATION SERVICES, LLC,
Defendant-Appellee

Appeal from the United States District Court for the
Northern District of Alabama
Southern Division
Case No. 2:09-cv-00489-SLB

## APPELLANT'S REPLY BRIEF

Peter H. Burke
Micah S. Adkins
J. Allen Schreiber
BURKE, HARVEY & FRANKOWSKI, LLC
2151 Highland Avenue South, Suite 120
Birmingham, AL 35205
Phone: (205) 930-9091
Fax:   (205) 930-9054

Counsel for Appellant Cory Singletery

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

TABLE OF RECORD REFERENCES IN THE BRIEF ............................ v

INTRODUCTION .............................................................................. 1

ARGUMENT ..................................................................................... 3

    A. This Court Reaffirmed the Well Established Principal that Cases Should go to a Jury If a Material Question of Fact is Present ............................ 3

    B. *Edeh II* Shows Singletery's Claim for Willfulness Should go to a Jury .......... 6

    C. Equifax Recognizes that its Conduct is Subject to a Reasonableness Standard. ................................................................. 9

    D. Assuming *Arguendo* that the Issues Presented to this Court are of First Impression, that Fact Does Not Provide Equifax any Relief. ........................... 12

        1. The FTC Forewarned Against CRAs Requesting Additional Identifying Information Because it May Thwart Consumers' Rights ............................ 13

        2. Equifax Accepts as True Complaints it Receives from Central Source ...... 15

        3. Equifax's Human Error Argument is Unavailing and Case Law Supports Singletery's Position ................................................................. 16

    E. Equifax's Argument of "New" Issues Is Meritless .......................................... 20

    F. Because the Willfulness Inquiry Predominates in this Action, the Court Should Remand for Further Proceedings on Class Matters. ........................... 25

CERTIFICATE OF COMPLIANCE ....................................................... 27

CERTIFICATE OF SERVICE ............................................................... 28

## TABLE OF AUTHORITIES

CASES:

*Apodaca v. Discover Financial Servs.,* 417 F. Supp. 2d 1220 (D.N.M. 2006) ......... 10, 11

*Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (U.S. 2007) .................................... 21

*Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 (6th Cir. 2012) ....................... 6

*Borden, Inc. v. Fla. East Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir. 1985) ........... 22

*Bryan v. United States*, 524 U.S. 184, 191, 118 S. Ct. 1939,
    141 L. Ed. 2d 197 (1998) .................................................................................. 5

*Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999) ....................... 1

*Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 690 (7th Cir. 1985) .............. 22

*Chakejian v. Equifax*, 256 F.R.D. 492, 499 (E.D.Pa. 2009) .................................... 22

*Cortez v. Trans Union*, 617 F.3d 688, 722 (3d Cir. 2010) ........................................ 13

*Dalton v. Capitol Assoc.*, 257 F.3d 409 (4th Cir. 2001) ............................................ 16

*Edeh v. Equifax Info. Servs., LLC*, 2012 U.S. Dist. LEXIS 135425, *21 (D. Minn.
    Sept. 21, 2012) .................................................................................................. 7

*Edeh v. Equifax Info. Servs., LLC*, 2013 U.S. Dist. LEXIS 9059 (D. Minn. Jan. 23,
    2013) ............................................................................................................ 7, 8

*Feliciano v. City of Miami Beach*, 2013 *U.S.App. LEXIS* 2524
    (February 5, 2013) .............................................................................................. 4

*First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 286 F.R.D. 630
    (M.D. Fla. 2012) ............................................................................................... 23

*Fregoso v. Wells Fargo Dealer Services, Inc.*, 2012 U.S. Dist. LEXIS 151785, *30
    (C.D. Cal. October 16, 2012) .............................................................................. 6

*Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 U.S. Dist.
    LEXIS 82483(N.D. Ill. Oct. 15, 2008) ............................................................... 25

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ............................................................ 23

*Hulsey v. Pride Restaurants, LLC,* 367 F.3d 1238, 1247 (11th Cir. 2004) ............... 3

*Hurlbert v. St. Mary's Health Care Sys., Inc.¸* 439 F.3d 1286 at 1297
 (11th Cir. 2006) ....................................................................................................... 21

*In re Intelligroup Securities Litig.*, 527 F. Supp. 2d 262, 273-4
 (D. N.J. 2007) ......................................................................................................... 11

*Jordan v. Equifax Info. Serv., LLC*, 410 F. Supp. 2d 1349,
 1355-56 (N.D. Ga. 2006) ....................................................................................... 19

*Menton v. Experian Corp.*, 2003 U.S. Dist LEXIS 3325, *12
 (S.D.NY March 6, 2003) ....................................................................................... 18

*Neal v. Equifax Info. Serv., LLC*, 2005 WL 5249688
 (N.D. Ga. March 5, 2005) ..................................................................................... 17

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) .............................. 23

*Rambarran v. Bank of America,* 609 F.Supp.2d 1253 (S.D. Fla. 2009) .................... 19

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (U.S. 2007) .................................... 5

*Schaffhausen v. Bank of America, N.A.,* 393 F.Supp.2d 853
 (D.Minn.2005) ......................................................................................................... 19

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139
 (N.D. Ill. 2010) ....................................................................................................... 25

*Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 40 (1st Cir. 2003) ................ 25

*Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010) .............. 25, 26

*Strickland v. Norfolk S. Ry. Co.,* 692 F.3d 1151, 1160 (11th Cir. 2012) ................... 3

*Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000) .............. 4

*Surowitz v. Hilton Hotels, Corp.,* 383 U.S. 363, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966)................................................................................................................ 22

*Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986).................................. 4

*Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 610 (E.D. Pa. 2012) ...................... 6

OTHER AUTHORTIES:

Chi Chi Wu, *Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports*. (NCLC) (January 2009) http://www.nclc.org/images/pdf/pr.reports/report_automated_injustice.pdf last visited 2/20/2013. ...................................................................................................... 8

Federal Register, Vol. 69, No. 121, Thursday, June 24, 2004, Rules and Regulations 35475............................................................................................................ 12

Federal Register, Vol. 69, No. 121, Thursday, June 24, 2004, Rules and Regulations 35490-91....................................................................................................... 15

TABLE OF RECORD REFERENCES IN THE BRIEF

| Brief Page # | | Docket # |
|---|---|---|
| 24 | Equifax's Motion for Leave to File A Single Statement of Facts in Support of Defendant Equifax's Motion for Summary Judgment and In Opposition to Plaintiff's Motion to Certify Class | 111 |
| 24 | Order granting Motion for Leave to File a unified statement of facts | 113 |
| 20 | Singletery's Response in Opposition to Equifax's Motion for Summary Judgment | 139 |
| 24 | Equifax's Surreply in Opposition to Plaintiff's Motion for Class Certification | 142 |
| 24 | Magistrate Judge's Report and Recommendation | 149 |
| 12, 16, 18, 20 | Singletery's Objections to the Report and Recommendation | 150 |
| 17 | Equifax's Response to Plaintiff's Objection to the Magistrate Judge's Report and Recommendation | 152 |
| 14, 15, 22 | Plaintiff's Reply Brief in Support of His Objection to the Magistrate Judge's Report and Recommendation | 153 |
| 4, 5, 10, 18 | Memorandum Opinion | 156 |

## INTRODUCTION

On October 10, 2012, just weeks before Plaintiff Cory Singletery's ("Singletery") Appellant Brief was due, the Federal Trade Commission ("FTC") filed an action against Equifax, alleging that Equifax improperly allowed third parties access to consumer information for an impermissible purpose between 2008 and 2010.[1]  Equifax's alleged conduct overlaps the timeframe at issue in this action. Singletery alleges Equifax systematically denied thousands of consumers access to free file disclosures to which they were entitled under the Fair Credit Reporting Act. ("FCRA") (Appellant Brief N.2 P 4).  At a minimum, the recent government enforcement action calls into question Equifax's apparent disregard of its obligations under the FCRA.

On February 11, 2013, or just ten days before Singletery's Reply Brief was due, the FTC announced that it had finalized its Study for Congress as required under §319 of the FACT Act to determine the accuracy and completeness of consumer credit reports.[2]  The FTC's Study employed 1,001 consumers who reviewed 2,968 of their own credit reports. The main findings from this Study showed that "the proportion of consumers who encounter one or more potential

---

[1] *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999)(court may take judicial notice of SEC filings for purpose of determining what statement the documents contain, not to prove the truth of the documents' contents).

[2] *In re Intelligroup Securities Litig.,* 527 F. Supp. 2d 262, 273-4 (D. N.J. 2007)(noting that "[t]he court 'may take judicial notice of records and reports of administrative bodies,' such as notices and opinion letters.'").

material errors over their three credit reports is well within the wide range reported by previous accuracy studies performed by consumer advocacy groups, credit reporting industry specialists, and other government agencies." (Study at iv.)

262 individuals out of 1,001 participants (26%) filed a dispute with at least one consumer reporting agency. *Id.* Consumers alleged inaccuracies and made disputes in 19% of all of the credit reports. *Id.* The FTC's Press Release[3] announcing the Study's results stated:

- One in four consumers identified errors on their credit reports that might affect their credit scores;
- One in five consumers had an error that was corrected by a credit reporting agency (CRA) after it was disputed, on at least one of their three credit reports;
- Four out of five consumers who filed disputes experienced some modification to their credit report;
- Slightly more than one in 10 consumers saw a change in their credit score after the CRAs modified errors on their credit report; and
- Approximately one in 20 consumers had a maximum score change of more than 25 points and only one in 250 consumers had a maximum score change of more than 100 points.

Commenting upon the Study's results, Howard Shelanski, Director of the FTC's Bureau of Economics exclaimed: "These are eye-opening numbers for American consumers. . . .The results of this first-of-its-kind study make it clear that consumers should check their credit reports regularly. If they don't, they are

---

[3] http://www.ftc.gov/opa/2013/creditreport.htm last visited 2/12/13.

potentially putting their pocketbooks at risk." Singletery's lawsuit against Equifax has attempted to give validity to this very admonition. The lawsuit raises the most fundamental right under the FCRA – consumers' access to their files. Absent access to their files, consumers are unable to determine whether their file contains inaccurate or incomplete information. When consumer reporting agencies ("CRAs"), like Equifax, frustrate consumers' access to their files, consumers are at risk for paying higher interest rates or credit denials due to inaccurate information.

## ARGUMENT

### A. This Court Reaffirmed the Well Established Principal that Cases Should go to a Jury If a Material Question of Fact is Present.

Singletery's Initial Brief demonstrates how the District Court created error in taking the issue of willfulness from the jury. Two weeks ago, in *Feliciano*, Judge Carnes provided a colorful overview of the evolution of witness credibility jurisprudence. He then explained how district courts had invaded the province of the jury by making credibility determinations and not adhering to Rule 56.

> *Federal Rule of Civil Procedure 56* and countless decisions applying it express the modern rule that a case should be put to the jury if there is any genuine issue of material fact, including one created solely by the testimony of a party. See, e.g., *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012); *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000). Occasionally there is pushback against this rule, sometimes expressed in orders granting summary judgment despite what is described as the non-movant's "unsubstantiated" or "uncorroborated" or non-objective

testimony. At other times we have seen summary judgment based on disapproval of a party's testimony as "conclusory" when it is not.

*Feliciano v. City of Miami Beach*, 2013 *U.S.App. LEXIS* 2524 at *3-4 (February 5, 2013).[4]

Singletery experienced that same type of pushback here, as the District Court discounted his testimony, his father's testimony, and otherwise ignored relevant evidence. One such example concerns Singletery's request for a file disclosure due to adverse action. The District Court wrote:

> In support of its Motion for Summary Judgment, defendant presented evidence that plaintiff, or his father, had not requested an adverse-action disclosure and that it had no record of an adverse action against plaintiff from GE Money. (Doc. 124 ¶¶ 19-20.) <u>Other than James Singletery's testimony that he called the 1-800 number and requested the adverse action disclosure,</u> (*see* doc. 127 at 171-73, 176, 184), nothing in the record supports an inference that defendant willfully failed to provide plaintiff an adverse-action disclosure.

(Doc. 156 P 27.) (underline added).

Another example of the District Court's pushback concerns the adverse action phone script evidence. Singletery presented this evidence to show Equifax's state of mind regarding its obligations to provide free file disclosures, as intent is

---

[4] The Eleventh Circuit has previously described summary judgment as "'a lethal weapon,' cautioning courts to 'be mindful of its aims and targets and beware of overkill in its use.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986).

relevant to the willfulness inquiry under *Safeco*.[5]    The District Court again paid

short rift to Singletery's evidence, writing:

> In his Objection, plaintiff does not cite the court to any evidence that
> plaintiff or his father were denied his adverse-action disclosure based
> on defendant's automated phone system sending them to defendant's
> website.  Therefore, any objections to the Magistrate Judge's Report
> and Recommendation based on issues with defendant's automated
> phone system are **OVERRULED**.

(Doc. 156 Pp 26-27).

As previously explained, Equifax's phone script patently disregards

consumers' independent right to a free file disclosure due to adverse action when

Equifax redirects consumers to the free annual disclosure website.    Whether it

happened to Singletery in this action is beside the point because the expected

outcome of the policy is the same.    In fact, if Singletery had gone to the website

and successfully received his disclosure, it would have precluded him from

receiving another free annual disclosure within the next twelve months.    Further, if

Singletery then received another adverse action notice a month later based on

information Equifax provided a user, and then attempted to receive his free

---

[5] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (U.S. 2007) ("We have said before that willfully is a word of many meanings whose construction is often dependent on the context in which it appears, *Bryan v. United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) (internal quotation marks omitted); and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well. . .").

disclosure, he again would have been redirected to the free annual disclosure website. Of course, as Singletery would have presumably received a disclosure a month earlier, he would have not been able to receive another free disclosure.

In sum, Judge Carnes' timely reminder about the pushback against Rule 56's proper standard is squarely implicated in this appeal.

B. *Edeh II* Shows Singletery's Claim for Willfulness Should go to a Jury.

Singletery's Initial Brief cited four recent cases which all hold that a willful violation of the FCRA is a question of fact that should be decided by a jury. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 (6th Cir. 2012)(rev'd summary judgment on the issue of willfulness under the FCRA because the evidence presented was not so one-sided to that USAA's investigation was reasonable as a matter of law); *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 610 (E.D. Pa. 2012)(trial court denied summary judgment on the issue of willfulness noting "a jury could thus find that by so limiting the procedures ACDV analysts were to follow, AT&T recklessly disregarded Plaintiff's FCRA rights."); *Fregoso v. Wells Fargo Dealer Services, Inc.*, 2012 U.S. Dist. LEXIS 151785, *30 (C.D. Cal. October 16, 2012)(summary judgment denied as to willfulness finding that "PCC's process suggests at least a possibility that PCC disregarded the risk of noncompliance in implementing a cheap, cursory system designed to process

consumer disputes as quickly as possible.")[6]

Remarkably, Equifax's Brief contains no reference whatsoever to any of these cases. Apparently, Equifax has nothing to say about their holdings. In keeping with this trend, almost a month ago, *Edeh v. Equifax Info. Servs., LLC*, 2013 U.S. Dist. LEXIS 9059 (D. Minn. Jan. 23, 2013) ("*Edeh II*") was issued. In denying Equifax's summary judgment on willfulness, the court found:

> [T]here is a genuine dispute of material fact regarding whether Equifax's failure to provide Edeh with the requested credit information was willful. On one hand, Edeh himself presented evidence of the various attempts made by Equifax personnel to assist him in obtaining his consumer credit file. A jury might find that the evidence shows only confusion and miscommunication between the various departments within Equifax.
>
> On the other hand, there is evidence that on eleven different occasions between November 2011 and May 2012, Edeh attempted to contact Equifax to obtain his consumer credit file. Equifax asserts that when a consumer whose credit file is offline requests credit disclosures, Equifax's policy is to route the request to its internal consumer department, where the request is then supposed to be communicated to Equifax's outside counsel who then coordinates the delivery of the file to the consumer. It appears as though Equifax's policy failed in this case. Despite Edeh's numerous attempts to obtain his file, his request was either not routed to the correct department, was not communicated to outside counsel, or outside counsel did not arrange for delivery of the credit file to Edeh. Equifax's contravention of its

---

[6] Singletery previously cited to *Edeh v. Equifax Info. Servs., LLC*, 2012 U.S. Dist. LEXIS 135425, *21 (D. Minn. Sept. 21, 2012) and will refer to that decision hereinafter as *Edeh I* ("[I]n light of Edeh's repeated communications to Equifax and Equifax's failure to fully apprise Capital One of the substance of Edeh's disputes, there is a genuine dispute of material fact as to whether Equifax's conduct constituted a willful violation of the FCRA.").

own stated policy, on numerous occasions, is evidence from which a reasonable inference of willful noncompliance might be drawn.

*Edeh*, 2013 U.S. Dist. LEXIS 9059, * 17-18. (underline added).

The same holds true in this action.  Singletery provided a litany of facts to create a jury question on the issue of willfulness. On the one hand, a jury might conclude that the system Equifax had in place which led to its inability to provide Singletery his free file disclosures after numerous requests was the result of "mere human error."   On the other hand, a jury may reasonably conclude that Equifax's failure to provide Singletery his free file disclosures after numerous requests was a willful violation of the FCRA.

As quoted in Singletery's amended complaint, the numerous putative class members failed to receive their free disclosures from Equifax under similar circumstances. The end result was the expected outcome of a system Equifax designed to respond to consumer requests in the quickest time possible at the lowest cost with complete disregard of additional relevant information in the consumers files and knowledge of cosmetic errors.[7] In sum, a jury should decide

---

[7] See Chi Chi Wu, *Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports.* (NCLC) (January 2009) http://www.nclc.org/images/pdf/pr.reports/report_automated_injustice.pdf last visited 2/20/2013.  It is this same type of automated system that Equifax uses to respond to free disclosure requests that has led to the systematic denial of consumers to their credit disclosures.

the issue of willfulness in this case because Singletery presented substantial evidence of Equifax's willful failure to comply with the FCRA.

C. Equifax Recognizes that its Conduct is Subject to a Reasonableness Standard.

Equifax uses the word "reasonable" twenty-seven times in its brief and contends that its conduct is reasonable. See Brief Pp 15, 18, 22, 36, 45-47. Equifax asserts that its "exact match" policy of all personal identifiers is a reasonable procedure to protect consumers from identity theft. As previously argued, if Equifax wants to implement an exact match policy with the knowledge of the likelihood of typographical errors in personal identifying information, then Singletery should be allowed to present evidence of additional steps Equifax could have implemented to override or supplement its standard default policy of nondisclosure.

Specifically, Singletery should be able to present to a jury that Equifax could: (1) use its own SafeScan technology to assign probability scores to a consumers request; (2)  instruct its agents to flag requests for further file investigation or validation from its own records[8]; (3) take more than 24-48 hours to

---

[8] The District Court notes: "In 2007 and 2008, five inquiries from creditors (requests for credit reports) were made on plaintiff's credit file. To make an inquiry regarding a consumer, the creditor must enter identifying information into Equifax's system, such as the consumer's name, address, and/or Social Security number. Two creditors who made inquiries in June 2007 listed plaintiff's address as "1167 English Kn," Birmingham, Alabama, and the remaining 2007 and 2008

investigate and fulfill requests; (4) allow its agents to review relevant information in the consumer's file, such as identifying documents; (5) accept Central Source's address validation as true; (6) escalate repeated requests; (7) escalate consumer complaints; or (8) re-word its automated phone script so consumers do not "burn" their right to a free annual disclosure when making a request due to adverse action.

Instead, Equifax's system defaults in favor of nondisclosure.   Whether Equifax's default policy is reasonable, and whether it could employ additional steps to comply with the FCRA's disclosure requirements, should be determined by a jury.   For example, in *Apodaca*, the court denied Equifax's summary judgment on willfulness because questions of material fact were present. *Apodaca v. Discover Financial Servs.*, 417 F. Supp. 2d 1220 (D.N.M. 2006). The court explained:

> The real question Plaintiff is raising in this case, however, is not whether to operate a system that defaults to an over-inclusive procedure instead of an under-inclusive procedure, <u>but what additional steps, if any, are required to override or correct the standard procedures to which a credit-reporting agency defaults when those procedures are not functioning properly</u>. In other words, I do not understand Plaintiff to be claiming punitive damages merely because Equifax's credit-reporting system initially defaulted to an over-inclusive procedure that mistakenly included information belonging to another consumer on her credit report and relied on the furnisher of

inquiries listed plaintiff's address as "1667 English KN," Birmingham, Alabama." (Doc. 156, Pp. 3-4).  Singletery contends that this type of cross-referencing from its own records is just one additional step Equifax could take to validate the requests.  Thus, a jury should be allowed to determine if Equifax's failure to do so is reasonable or whether it's tantamount to a willful violation of the FCRA.

that information to determine its accuracy or applicability. Rather, I understand Plaintiff to be making the argument that punitive damages are warranted because <u>Equifax consciously and recklessly decided not to make available any additional steps which would have overridden or supplemented the standard procedures to which it initially defaulted in Plaintiff's case, even though the company knew that those procedures were so over-inclusive they would result in violations of consumer rights without such additional steps</u>.

*Id.*, at 1230.(underline added).

The court went on to explain:

Such additional steps might be characterized as a 'selective requirement limited to cases where suspicious circumstances plainly indicate a need for further inquiry,' while the standard CDV procedure might be characterized as a 'broadly imposed requirement' to which the system initially defaults. Unlike Mr. Lee's counsel, I do not understand Plaintiff's counsel in this case to be 'push[ing] the envelope' in favor of a 'broadly imposed requirement of greater independent investigation' in every single case.

*Id.*

The same holds true here. Because Plaintiff's address did not exactly match Equifax's file due to a scrivener's error its exact match policy defaulted to nondisclosure. When a slight difference in personal identifying information[9] is presented, and other personal identifying information is correct – as it was here –

---

[9] "Cosmetic error" is a term of art that Equifax developed in order to downplay to Congress slight differences in its files relating to personal identifying information. Now, when Equifax is confronted with its own terminology, it attempts to recast these known differences as substantive. In any event, it is the existence of these slight differences in the files, Equifax's knowledge of these differences, and its failure to sort through them when presented with a file request that Singletery contends is unreasonable and a willful violation of the FCRA.

Equifax should take additional steps to identify the consumer.[10]   As the FTC

explained:  "[T]he purpose of the 'reasonably necessary' standard is to allow for

advances in technology or other developments that improve proper identification

and authentication." Federal Register, Vol. 69, No. 121, Thursday, June 24, 2004,

Rules and Regulations 35475.

In sum, while Equifax is entitled to argue to a jury that its policy is

reasonable, Singletery should be allowed to argue that the opposite is true;

Equifax's policy is unreasonable because of its failure to take any additional steps

to validate consumers' identities.

### D. Assuming *Arguendo* that the Issues Presented to this Court are of First Impression, that Fact Does Not Provide Equifax any Relief.

As Singletery previously argued, a reasonableness standard permeates the

FCRA since its enactment. *See* Docs. 150 Pp 40-43 and Appellant's Brief Pp 54-

55.  Hence, there is absolutely no reason for Equifax to believe that its conduct at

issue in this action should be subject to any other standard. *See* 16 C.F.R.

---

[10] 12 C.F.R. § 1022.82 imposes duties on users of consumer reports to respond to discrepancies in addresses that CRAs send to them about consumers, and provides guidance on this issue.  After receiving a notice of discrepancy on the address, the users must attempt to confirm the address; the regulations provide the following as examples of confirmation methods: (1) Verifying the address with the consumer about whom it has requested the report; (2) Reviewing its own records to verify the address of the consumer; (3) Verifying the address through third-party sources; or (4) Using other reasonable means. 12 C.F.R. § 1022.82 (d)(2).  As explained above, these methods are available to Equifax, but it chooses not to use (2), (3) or (4).  Further, Equifax did not notify GE Finance, or the two other inquirers using Singletery's correct address, that there was an address discrepancy.

§614.1(1-2)(a CRA shall implement reasonable procedures to determine what is proof of identity, but this requirement must be balanced with the minimum amount of information necessary "to match consumers with their files" and the "risk of harm arising from misidentifying the consumer.").

In *Cortez v. Trans Union*, 617 F.3d 688, 722 (3d Cir. 2010), Trans Union attempted to shirk liability under the FCRA by arguing that the issue had not previously presented itself to any Court of Appeals.  In rejecting this contention, the court explained:

> Trans Union correctly reminds us that we are the first court of appeals to address whether the FCRA applies to information from OFAC's SDN List in the form of an alert reported by a credit reporting agency. This does not, however, result in a borderline case of liability as Trans Union suggests. It merely establishes that the issue has not been presented to a court of appeals before. The credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided. The statute is far too clear to support any such license.

*Cortez*, 617 3d at 722.

Likewise, Equifax knows that it is subject to a reasonableness standard in responding to consumers' requests for file disclosures. The FCRA is clear on CRAs duties to provide consumers with their file. 15 U.S.C. §§1681g and j. Thus, Equifax is not entitled to a free pass for its willful conduct. *See* Equifax Brief P 29; Pp 41-44.

1.    The FTC Forewarned Against CRAs Requesting Additional Identifying Information Because it May Thwart Consumers' Rights

13

Assuming the issue is one of first impression, Equifax cannot claim that the FTC has never provided guidance as to a CRA using requests for additional identifying information as a means to thwart consumers' rights. The FTC's Final Rule cautioned requests for additional information by CRAs from consumers must be reasonable. (Doc. 153-4)

The FTC explained:

> Some commenters were concerned that the Commission's proposal to allow consumer reporting agencies and information furnishers to make reasonable requests for additional information or documentation for an ''identity theft report'' may result in consumer confusion by requiring victims to submit different information or documentation to different companies. **Commenters also argued that permitting a reasonable request for additional information or documentation created the potential for abuse**, and could make recovery more difficult as well as delay the provision of services. Permitting a reasonable request for additional information or documentation may result in victims having to submit different information or documentation to different companies. **However, the requirement that the request must be reasonable should limit requests**.

(Doc. 153-4 P 7)(bold added).

When determining how much time a CRA should have to request additional information, the FTC noted:

> The consequences may be to force them to choose between accepting the law enforcement report as the complete identity theft report regardless of whether the identity theft claim is legitimate, **or sending out *pro forma* requests for additional information or documentation, which may or may not be reasonable under the circumstances**. The former instance would undermine the Commission's reasons for allowing reasonable requests of

14

information or documentation initially—to minimize abuse of the credit reporting system. **The latter instance might result in an increase of consumer complaints and disputes regarding the reasonableness of the information or documentation requests, which would not be a beneficial use of consumers' time and resources**.

(Doc. 153-4 P 8)(bold added).

Of course, it is Equifax's *pro forma* requests for additional information being sent to consumers that is at issue here. The FTC Final Rule explains:

> The Commission notes that FCRA §610(a) requires consumer reporting agencies to obtain ''proper identification'' from consumers as a condition of providing a file disclosure. 15 U.S.C. 1681h(a). The final rule, however, permits nationwide and nationwide specialty consumer reporting agencies to collect only as much personally identifiable information from consumers as is reasonably necessary to properly identify the consumer. Final rule §§ 610.2(b)(2)(ii) and 610.3(a)(2)(ii). The Commission does not believe that FCRA § 610 is inconsistent with the requirement to accept requests by telephone. Given the unambiguous requirement of the FACT Act that nationwide specialty consumer reporting agencies accept telephone requests for annual file disclosures, it is incumbent upon nationwide consumer reporting agencies to develop methods to identify consumers by telephone, to the extent practicable.

Federal Register, Vol. 69, No. 121, Thursday, June 24, 2004, Rules and Regulations 35490-91.

2.  Equifax Accepts as True Complaints it Receives from Central Source

Equifax asks the Court for a pass alleging that the Central Source did not characterize the "consumer comments" it received as complaints, and therefore, Equifax did not receive notice of any complaints from that entity. Moreover, in an

attempt to downplay their significance, Equifax characterizes the comments as "hearsay" or being "unsubstantiated."

Equifax's arguments are disingenuous and without merit. First, Equifax chooses to validate these consumer complaints by treating them as legitimate requests for file disclosures with its policy to "process [consumer] requests or roll [those complaints] into the regular disclosures." (Doc. 150 P 20) *Citing* Doc. 94 at ¶¶66-67. Second, of course, the reason these complaints are "unsubstantiated," is because Equifax chooses not to contact the consumer and investigate the complaint.

In sum, on appeal Equifax may attempt to characterize the complaints it received from Central Source as unsubstantiated or as hearsay. But when it comes to responding to them on a day to day basis, it treats the complaints as valid requests for file disclosures, it does not escalate the requests, and it applies its uniform policies and procedures to each request. *Dalton v. Capitol Assoc.*, 257 F.3d 409 (4th Cir. 2001) (other consumer complaints should not be ignored when determining willfulness).

### 3. Equifax's Human Error Argument is Unavailing and Case Law Supports Singletery's Position

Equifax's failure to provide Singletery his free file disclosures is not the result of "mere human error." It is the expected outcome of a system that Equifax developed to respond to requests for file disclosures in a quick, cursory and binary

manner.  In fact, Equifax boasted to the District Court about how many free disclosures it provided in 2008, purportedly as proof that it takes it responsibilities under the FCRA seriously; yet, Equifax also acknowledged "**that its procedures, in the vast majority of cases, do not create a hindrance to disclosure**."  (Doc. 152 P 9)(bold added).  A more tacit admission that Equifax's procedures, and not just human error, play a role in disclosures not being fulfilled is difficult to imagine.

The three cases Equifax relies upon for its "human error' argument are easily distinguishable and a close reading of the cases actually supports Singletery's theory of willfulness.  First, it should be noted that both *Neal v. Equifax Info. Serv., LLC*, 2005 WL 5249688 (N.D. Ga. March 5, 2005) and *Jordan v. Equifax Info. Serv., LLC*, 410 F. Supp. 2d 1349 (N.D. Ga. 2006) were decided pre-*Safeco*, and therefore, were decided without the benefit of the Supreme Court's opinion.  The more recent cases Singletery cites to this Court have all been decided with the benefit of the Supreme Court's guidance on the issue of willfulness.[11]

Second, in *Neal*, the court granted summary judgment because there was only one dispute made by the consumer and Equifax resolved the dispute in less than three months. *Neal v. Equifax Info. Serv., LLC*, 2005 WL 5249688, *20-21 (N.D. Ga. March 5, 2005).  Here, Equifax disregarded no less than six requests for

---

[11] At its own risk, Equifax ignores the well reasoned opinions in *Boggio*, *Fregoso*, *Edeh* and *Van Veen*, *Infra*.

Singletery's file disclosure. Equifax even disregarded Singletery's threat of legal action if he did not get his report.  In fact, the futility of Equifax's policy and procedures is shown by Singletery's July 1, 2008, letter wherein he informed Equifax that he had already responded to its requests twice and if he did not receive his report soon he would "do what's necessary legally to obtain my credit report."(Doc. 156 P 7).  Most entities would reach out to a consumer who threatened legal action or respond in some manner to satisfy the consumer.  But Equifax's system does not allow for this type of response, so Singletery endured another *pro forma* request for identifying information.

Further, Equifax did not provide Singletery with his file disclosure until nearly a year after his requests, and only after he filed the lawsuit. *See, Menton v. Experian Corp.*, 2003 U.S. Dist LEXIS 3325, *12 (S.D.NY March 6, 2003) )"[W]e find that the issue of whether a seven-month delay constitutes an intentional failure on the part of Experian to provide a credit report 'on request' remains a 'live issue' for the purpose of assessing such damages.") (Doc. 150 Pp 50-51).  Hence, the number of communications and failure to timely comply with the FCRA are clearly different in the two cases.

Third, in *Jordan*, the court held Equifax did not willfully violate the FCRA because the disputed information re-appeared due to a computer glitch and the plaintiff failed to put forth any evidence of Equifax's intention to thwart plaintiff's

rights under the FCRA. *Jordan v. Equifax Info. Serv., LLC*, 410 F. Supp. 2d 1349, 1355-56 (N.D. Ga. 2006). Specifically, Sallie Mae furnished incorrect information to Equifax after Equifax had already deleted the information. The consumer only made one dispute to Equifax; unlike the circumstances here, where Singletery communicated with Equifax on at least six occasions. *See* Doc. 153 Pp 18-23.

Fourth, the facts of this case are far removed from those presented in *Rambarran* because the *pro se* plaintiff in that action failed to present any facts that the defendant violated the FCRA. *Rambarran v. Bank of America*, 609 F.Supp.2d 1253 (S.D. Fla. 2009). Prior to the defendant's motion for summary judgment, the plaintiff stipulated that he had no evidence to support his willfulness claim. *Id. See* Doc. 153 Pp 23-25.

Importantly, the *Rambarran* court explained why numerous requests equate to a willful violation of the FCRA, citing to the earlier decision of *Schaffhausen v. Bank of America, N.A.*, 393 F.Supp.2d 853 (D.Minn.2005). It explained:

> In that case, plaintiff's FCRA allegations survived summary judgment on all fronts, including his claim for punitive damages against a bank, based on its willful failure to comply with the FCRA after it issued 'inconsistent response[s] **in the face of numerous requests ... and inquiries' to remove mention of an incorrectly reported charged off account.**

*Id.* (bold supplied).

Further, the *Rambarran* court emphasized two critical differences between the *Schaffhausen* facts, and those before it, including (1) the time period between

19

from the date the furnisher became aware of the inaccuracy and the date in which the furnisher corrected the inaccuracy; and (2) the single FCRA violation (the reporting of inaccurate information). *Id.*, at 1273.

Here, Equifax took nearly a year to comply with the FCRA before it provided Singletery with his free file disclosure, and only after he filed suit. Singletery made his first request to Equifax in or around May 2008 (Doc. 150 P 5). Singletery filed his lawsuit on March 12, 2009 (Doc. 139 P 3). Equifax provided Singletery's counsel with his file disclosure on May 27, 2009. (Doc. 150 P 8). Further, despite having received sufficient information to disclose Singletery's file, Equifax misrepresented twice to Singletery that he must make a request to the Central Source. Equifax also misrepresented to Singletery that it could not fulfill his request until he provided additional information, notwithstanding the fact that it has already received the information to update his file.

E. Equifax's Argument of "New" Issues Is Meritless.

Perhaps, recognizing that the factual record in this matter and the existing case law show that the issue of willfulness was improperly taken from the jury, Equifax contends that Singletery improperly attempted to: amend his complaint after the close of discovery; and raise issues after Equifax submitted its motion for summary judgment, or after the Magistrate submitted the R&R, and even after the

District Court entered its final order.  Appelles's Brief  Pp 17-21.  As shown below, these contentions are all proverbial red herrings.

The overriding issue in this case was whether Equifax willfully violated the FCRA by failing to provide Singletery his free file disclosures.  That issue was set out in the original Complaint.  *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (U.S. 2007) ("A short plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests.").  When Singletery filed his Amended Complaint he provided umpteen examples of other consumers that experienced the same issues with Equifax when requesting their free file disclosures.  Singletery's pleadings put Equifax on notice of the issues presented in this action.[12]

It appears that Equifax's contention that Singletery attempted to "amend his complaint" is based in part upon Equifax's citation to Singletery's deposition, and the facts Singletery set forth therein relating to his claim.  Such an argument has no validity in a class case such as this, and Equifax's prior attempt at such a strategy was summarily rejected.

---

[12] Perhaps Equifax's convoluted argument is an attempt to convince this Court that Singletery somehow changed his theory of the case by adding new "claims."  This Court defines a new claim, as "an additional, separate statutory basis for entitlement to damages that was not originally raised in the complaint." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286 at 1297 (11th Cir. 2006).  The same provisions of the FCRA have always been at issue in this action and Singletery never asserted a different statutory basis for relief.

While Chakejian's understanding of the instant litigation may be limited, the Supreme Court has held that a class representative's lack of knowledge about his case does not make him an inadequate representative. *Surowitz v. Hilton Hotels, Corp.,* 383 U.S. 363, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966). See also *Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir. 1982) (finding adequacy requirement met even where the named plaintiff "displayed a complete ignorance of facts concerning the transaction that he was challenging"); *McCall, 236 F.R.D. at 253* ("The adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole.").

*Chakejian v. Equifax,* 256 F.R.D. 492, 499 (E.D.Pa. 2009)

In any event, contrary to Equifax's assertion, Singletery never attempted to amend his complaint at the end of discovery as there was no reason to do so.[13] Rather, Singletery and Equifax engaged in discovery and Singletery marshaled a core set of facts that he would rely upon in support of his motion for class certification and in opposition to summary judgment. *See also* Doc. 153 P 7 N 3.

Obviously, Equifax does not understand the purpose and role of discovery. The Supreme Court has explained that "[t]he various instruments of discovery now serve… as a device for ascertaining the facts, or information as to the existence or

---

[13] Of course, Equifax's contention that a plaintiff cannot amend his complaint at the end of discovery is simply incorrect. It is well settled that a Plaintiff can amend a complaint even after the close of trial to conform that pleading to the evidence. *See* Fed. R. Civ. P. 15(b)(1) (2012); *see also, Borden, Inc. v. Fla. East Coast Ry. Co.,* 772 F.2d 750, 758 (11th Cir. 1985) (stating that "[a]llowing an amendment to the pleadings at the close of trial to conform to the evidence presented is within the trial court's discretion"); *Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 690 (7th Cir. 1985) (stating that "a complaint can be amended at any time, even in the court of appeals, to conform to the evidence").

whereabouts of facts, relative to [the basic issues between the parties]." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Furthermore, the "overall purpose of discovery… is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts and therefore embody a fair and just result." *First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 286 F.R.D. 630 (M.D. Fla. 2012).

As for Equifax's contention that Singletery somehow waited in the shadows until the Magistrate issued the R&R, and then sprung new issues and evidence into the case, this is another faulty nonsensical contention.[14] The procedural posture of this case was unique because of the order in which pleadings were filed. Singletery moved for class certification and submitted an evidentiary submission in support of that motion. Equifax then requested that it be allowed to file one

---

[14] If any party appears to have attempted to raise a new argument on appeal it appears to be Equifax. On page vii of its Table of Contents, Equifax lists as a heading: "The Facts Demonstrate The Inadequacy of Singletery And His Counsel." When one turns to page 26 of the Brief, however, the heading reads: "The Facts Demonstrate Singletery's Inadequacy." It thus appears that Equifax may have fashioned an argument attacking the adequacy of Singletery's counsel, and thought better about including it in its Brief, as such argument was never presented below in opposition to class certification.

unified statement of facts opposing class certification and in support of summary judgment. (Doc. 111). The court granted Equifax's motion. (Doc. 113).

After Equifax's consolidated document was filed, Singletery still had the opportunity to oppose summary judgment and he also had the opportunity to file a reply in support of class cerification. In fact, Equifax filed a reply in support of summary judgment and Equifax filed a Sur-Reply document in opposition to class certification. (Doc. 142). Accordingly, all of the foregoing facts were at issue before the Magistrate.

Of course, Singletery had no way of knowing which facts the Magistrate would find important or upon which the R&R would be based. Only after the R&R was issued could Singletery point out the errors therein.[15] Moreover, as the District Court noted, "the district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Hence, Equifax's argument is simply wrong.

---

[15] The last paragraph of the R&R reads: "Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action." (Doc. 149).

F.     Because the Willfulness Inquiry Predominates in this Action, the Court Should Remand for Further Proceedings on Class Matters.

The predominance inquiry is satisfied in FCRA class actions when "the overarching issue is the liability issue of the defendant's willfulness. *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010) (quoting *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). Several courts have certified classes under the FCRA on this basis. *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139 (N.D. Ill. 2010) and *Gillespie v. Equifax Info. Servs.*, No. 05 C 138, 2008 U.S. Dist. LEXIS 82483(N.D. Ill. Oct. 15, 2008).

The *Gillespie* court succinctly explained that such an inquiry focuses on the CRA's conduct and not upon the individual consumer, stating:

> Equifax also argues that individualized proof of willfulness will be required and will predominate over common questions. But willfulness will not turn, as Equifax asserts, on whether class members can show that Equifax deliberately tried to harm them in particular. Rather, it turns on whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA. *See Safeco*, 551 U.S. at ___, 127 S. Ct. at 2208-09. That is plainly a common issue in this case, not an individual one, as it concerns a standardized practice that Equifax used. In short, willfulness is perfectly suitable for class-wide proof in this case.

*Gillespie* * 19 (N.D. Ill. Oct. 15, 2008).

The predominate issue in this case is whether Equifax willfully violated the FCRA by defaulting to non-disclosure when the consumer's personal identifying

information did not exactly match its database, absent taking any additional steps to verify the consumer's identity. The exact match policy instituted by Equifax mandated that the form letter be sent to Singletery and the putative class members. Further, Equifax's uniform conduct failed to consider other relevant information in the consumer's file, technological advances, or otherwise allow its agents any discretion. The predominance inquiry expressly resolves the sole theory of liability, namely, whether Equifax willfully violated the FCRA.

In *Stillmock, supra*, the Fourth Circuit reversed the district court's denial of class certification stating:

> In sum, we hold the grounds upon which the district court relied to deny class action certification in this case are untenable, and therefore, the district court abused its discretion in denying class certification on such grounds. *See Murray, 434 F.3d at 954* (reversing denial of class certification in action for statutory damages under FCRA). Accordingly, we vacate and remand for further proceedings.

*Stillmock*, 385 Fed. Appx. at 275.

Likewise, in this action, the Court should remand the action with instructions to reconsider the ruling on class certification in light of the fact that Singletery has presented a jury question on the issue of willfulness. Alternatively, the Court could determine for itself that this matter should be certified as a class action based on the authority cited herein.

Respectfully Submitted,


/s/ Peter H. Burke
Peter H. Burke (ASB-1992-K74P)
Micah S. Adkins (ASB-8639-I43A)
J. Allen Schreiber (ASB-2540-R76J)
**BURKE, HARVEY & FRANKOWSKI, LLC**
2151 Highland Avenue South, Suite 120
Birmingham, AL 35205
Phone:      (205) 930-9091
Fax:        (205) 930-9054
Email:      pburke@bhflegal.com
            aschreiber@bhflegal.com
            madkins@bhflegal.com

Attorneys for Appellant, Cory Singletery


## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 6,929 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2013, I have served a copy of the foregoing notice by electronic means using the CM/ECF system and by First Class US Mail to the following counsel of record:

Barry Goheen, Esq.
Lewis Perling, Esq.
K. Ann Broussard, Esq.
King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA 30309

/s/ Peter H. Burke
OF COUNSEL